# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| LAYNE H. ASTLE & | ) | Case No. 05-05706-TLM |
| CARLEEN MAY ASTLE | ) | |
| | ) | |
| Debtors. | ) | MEMORANDUM OF DECISION |
| | ) | |
| _____ | ) | |

## BACKGROUND AND FACTS

On November 14, 2005, Layne and Carleen Astle ("Debtors") filed a "family farmer" chapter 12 petition for bankruptcy relief in order to reorganize their dairy operation in Grand View, Idaho. *See* Doc. No. 1.

On February 8, 2006, Debtors filed a "Motion for Determination of Utility Deposit with Idaho Power Company and for Providing Secured Credit as Assurance of Payment (11 USC § 366)." *See* Doc. No. 43 (the "Motion"). Debtors' Motion proposes to provide Idaho Power with a $44,162.00 first priority lien[1] in their 220 head dairy herd and receivables as a mechanism to provide adequate assurance of payment of projected 2006 post-petition utility charges.

---

[1] Secured creditor J.R. Simplot Co. agreed to subordinate its first priority position in the collateral to the proposed lien in favor of Idaho Power. This was confirmed by that creditor's counsel at hearing. Debtors' assertion that the herd is worth almost $400,000.00 was uncontested.

MEMORANDUM OF DECISION - 1

The Motion states:

> This Motion is made because Idaho Power refuses to provide power to Debtors for their pumps unless Debtors prepay a deposit of $44,162. Counsel for Debtors has attempted to negotiate an arrangement with them [*sic,* Idaho Power] as provided in [Debtors'] budget, but Idaho Power refuses to negotiate along those lines, or along any lines that do not involve Debtors getting outside financing.

Motion at 2.

Debtors set the Motion for hearing on March 6, 2006. Though no written objection to the Motion was filed, Idaho Power's counsel appeared at that hearing and voiced an objection to the Motion and to the type of assurance of payment Debtors proposed.² Idaho Power argued at the hearing that it is entitled to adequate assurance of payment in the form of a cash deposit, letter of credit or surety bond, by virtue of § 366(c) of the Bankruptcy Code.³

Neither party submitted evidence at hearing, viewing the matter as essentially a legal question framed by Debtors' Motion and the record before the Court.⁴ The Court did allow both parties an opportunity to submit post-hearing

---

² Debtors' assertions at hearing that they were "surprised" by Idaho Power's appearance and objection were irrelevant. Nothing in the Motion, notice of hearing, or the Local Bankruptcy Rules operated to suggest that a prior written response was required. And, if relevant, the assertions were unconvincing given the language of Debtors' Motion quoted above.

³ All citations herein are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), since this case was filed after BAPCPA's October 17, 2005, effective date.

⁴ The Court takes judicial notice of its files and records. Fed. R. Evid. 201.

MEMORANDUM OF DECISION - 2

briefs, which they did on March 10. *See* Doc. No. 68, 69.[5]

The Court concludes Debtors' Motion will be granted. The following constitute the Court's findings of fact and conclusions of law on this contested matter. *See* Fed. R. Bankr. P. 9014 (incorporating Fed. R. Bankr. P. 7052).

**DISCUSSION AND DISPOSITION**

As with most issues arising under BAPCPA, the threshold inquiry is to determine precisely what was said, and left unchanged, as Congress amended the Code.[6]

Section 366 states in full:

(a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by that debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for

---

[5] Debtors also submitted post-hearing affidavits of Debtor Layne Astle and Debtors' counsel. *See* Doc. Nos. 70, 71. Such submissions were not authorized by this Court, nor would they be an appropriate method of addressing disputed facts. *See* Fed. R. Bankr. P. 9014(d); Local Bankruptcy Rule 9014.1. The factual assertions in the affidavits have therefore not been considered.

[6] This approach is driven by the consistent command that the Court defer to the language of the Code and to follow its "plain meaning." *See Lamie v. United States Tr.*, 540 U.S. 526, 534-36 (2004); *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (noting that it is the court's duty "to give effect, if possible, to every clause and word of a statute" (internal quotations omitted)); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (stating that the court's role is to enforce the text according to its terms when the language is plain); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (stating that the court must start its analysis with the existing statutory text); *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989).

MEMORANDUM OF DECISION - 3

relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

(c)(1)(A) For purposes of this subsection, the term "assurance of payment" means-
      (i)    a cash deposit;
      (ii)   a letter of credit;
      (iii)  a certificate of deposit;
      (iv)  a surety bond;
      (v)   a prepayment of utility consumption; or
      (vi)  another form of security that is mutually agreed on between the utility and the debtor or the trustee.

(B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.

(2) Subject to paragraph (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).
(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider–
      (i)    the absence of security before the date of the filing of the petition;
      (ii)   the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
      (iii)  the availability of an administrative expense priority.

(4) Notwithstanding any other provision of law, with respect to a

MEMORANDUM OF DECISION - 4

>   case subject to this subsection, a utility may recover or set off against
>   a security deposit provided to the utility by the debtor before the date
>   of the filing of the petition without notice or order of the court.

The words "and (c)" in § 366(a), and all of § 366(c), were added by BAPCPA; the balance previously existed. The parties focus their attention on BAPCPA's addition of § 366(c).

### A.    The parties' arguments

Debtors argue in their post-hearing brief, Doc. No. 69 at 2-3, that § 366(c) does not apply because this is a chapter 12, and not a chapter 11, case.[7] Alternatively, Debtors contend that, if § 366(c) does apply, their proposal of a first priority lien secured in the cattle herd and receivables is the legal and/or functional equivalent of a cash deposit or a surety bond as required by § 366(c)(1)(A)(i) or (iv).[8]

Idaho Power disagrees with this latter contention.[9] It argues that under the language of § 366(c), it is entitled to a cash deposit under § 366(c)(1)(A)(i) or one

---

[7] This argument was not advanced in the Motion, or at the hearing. The Motion asserted that the arrangement was proposed under "§ 366(b)(3)(A)." Motion at 3. As § 366(b)(3)(A) does not exist, it was read by the Court as a reference to § 366(c)(3)(A), and Debtors' arguments at hearing confirmed that interpretation.

[8] Debtors also suggested that because Idaho Power was served with the Motion and did not file an objection prior to hearing, it had "agreed" to the proposal and thus § 366(c)(1)(A)(vi) (authorizing adequate assurance "that is mutually agreed on") was satisfied. The contention was not at all persuasive, and not only because it was inconsistent with the above quoted language of Debtors' own Motion.

[9] Neither Idaho Power's oral nor written arguments considered the question of whether § 366(c) might not be applicable to chapter 12.

MEMORANDUM OF DECISION - 5

of the alternatives specifically authorized in § 366(c)(1)(A)(ii) through (v), and that no other technique or approach will satisfy its right to adequate assurance of payment.[10]

### B.    Section 366(c)'s provisions apply *only* in chapter 11

Generally, provisions found in chapter 3 of the Code apply in cases under chapters 7, 11, 12 or 13.  *See* § 103(a).  However, the language of § 366(c) is itself limiting.

Section 366(c)(2) states:

> Subject to paragraphs (3) and (4), *with respect to a case filed under chapter 11*, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive form the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(emphasis added).  This language rather clearly makes § 366(c)(2) applicable only in chapter 11 cases.

The initial clause found in § 366(c)(2) (*i.e.*, "Subject to paragraphs (3) and (4)") does not contradict this conclusion.  First, neither paragraph (c)(3) nor (c)(4) purports to expand § 366(c)(2)'s scope beyond chapter 11; they merely qualify

---

[10] Idaho Power also cites its own regulatory tariffs as authority for the proposition that only cash deposits and letters of credit are acceptable forms of adequate assurance of payment.  It does not address whether § 366 preempts the allegedly controlling effect of the tariffs or whether the tariffs themselves acknowledge that a court of competent jurisdiction can prescribe some other form of assurance of payments.  *See Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) (noting that when a bankruptcy court is determining adequate assurance of payment under § 366, it is not bound by local or state tariff regulations).

MEMORANDUM OF DECISION - 6

(c)(2)'s operation in chapter 11 cases. For example, § 366(c)(3)(A) provides a debtor with the ability to seek to modify the amount of an assurance of payment afforded a utility "under paragraph (2)." The provisions of paragraph (c)(4) address recovery or set off against a security deposit, but in no way indicate application beyond chapter 11 given (c)(4)'s limiting language "with respect to a case subject to this subsection."

Second, there is a matter of nomenclature. Section 366(c)(2) refers to "*paragraphs* (3) and (4)" while it refers to "*subsection* (a)" later in the same sentence. This leads to the conclusion that when § 366(c)(1)(A) – the listing of the forms of adequate assurance debated here by the parties – says "For purposes of *this subsection*," it is referring to subsection (c) alone. It does not state "for the purposes of this section." Nor does it state "for the purposes of subsection (b)." So a dispute over whether a proffered form of adequate assurance falls within the list in § 366(c)(1)(A) would be misplaced unless the case is one that falls under subsection (c) in the first place. As § 366(c)(1)(A) and (c)(2) together indicate, these are only chapter 11 cases.[11]

---

[11] Additional support for this reading comes from the opening clause of § 366(a) which states "Except as provided in subsections (b) and (c) of this section . . .." This shows that Congress knew how to refer to the entire section when intended. It also shows that subsections (b) and (c) are coequal, and both provide exceptions to or limits upon subsection (a). The rub is that subsection (c) internally and intentionally refers to and limits its application to chapter 11 cases, while subsection (b) contains no limits on the chapter(s) to which it is applicable. *Accord Steinebach v. Tucson Elec. Power Co. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) (applying § 366(b) to chapter 13 consumer debtors).

MEMORANDUM OF DECISION - 7

The Court is thus persuaded by statutory structure and language to conclude that all of subsection (c) applies only in chapter 11 cases and, to the precise point at issue in the present case, the specification of acceptable forms of adequate assurance of payment found in § 366(c)(1)(A) applies only in chapter 11 cases. *Accord In re Lucre, Inc.*, 333 B.R. 151, 153 (Bankr. W.D. Mich. 2005) (stating that "[s]ubsection (c) applies to all Chapter 11 cases filed after October 16, 2005");[12] *see also* Richard Levin & Alesia Ranney-Marinelli, *The Creeping Repeal of Chapter 11: The Significant Business Provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 603, 608 n.14 (2005).

While this conclusion is driven by the plain language of the Code, the Court acknowledges another indication of possible Congressional intent. In reference to BAPCPA, Congress stated that:

> Section 417 amends section 366 of the Bankruptcy Code to provide that assurance of payment, *for purposes of this provision*, includes a cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or other form of security that is mutually agreed upon by the debtor or trustee and the utility. It also specifies that an administrative expense priority does not constitute an assurance of payment.

H.R. Rep. No. 109-31, at 89 (2005) (emphasis added).

This excerpt might suggest that Congress intended to restrictively define

---

[12] The Court notes, however, that *Lucre* was not presented with the question raised here as to whether § 366(c) applies in other than chapter 11 cases.

MEMORANDUM OF DECISION - 8

assurance of payment for the whole of § 366.  It depends on whether the word "provision" refers to section 417 of the legislation or to § 366 of the Code.  But as enacted, BAPCPA provided a definition of adequate assurance applicable only to "subsection" (c).

Recourse to legislative history when the language of the Code is otherwise capable of a plain reading is debatable.  *See Lamie*, 540 U.S. at 536 ("We should prefer the plain meaning [of the Code] since that approach respects the words of Congress.  In this manner we avoid the pitfalls that plague too quick a turn to the more controversial realm of legislative history."); *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* ___ U.S. ___, 125 S.Ct. 2611, 2626 (2005) ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material.  Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms. . . . [L]egislative history is itself often murky, ambiguous, and contradictory.  Judicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in 'looking over a crowd and picking out your friends.'" (citations omitted)).  Section 366(c)'s language and meaning are plain enough, therefore the Court does not rely on this legislative history.

Since this is a chapter 12 case, the Court concludes Debtors must provide

MEMORANDUM OF DECISION - 9

adequate assurance of payment pursuant to § 366(b); they need not torture the language of subsection (c) to make their proposal fit.[13]

### C. Debtors have offered adequate assurance of payment

Under § 366(b), adequate assurance of payment must be "in the form of a deposit *or other security*." Section 366(b) (emphasis added).[14] In determining if a debtor has provided adequate assurance of payment to a utility, the Court is "afforded significant discretion" and must look at the facts of the case. *Virginia Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646, 650 (2d Cir. 1997);[15] *In re Utica Floor Maint.*, 25 B.R. 1010, 1016 (N.D.N.Y. 1982) (noting that "every § 366 proceeding must be decided upon its unique facts and the ultimate finding by the Court must be that the utility involved has or has not been provided with adequate

---

[13] Torture it they do. Their arguments that a lien, which secures a debtor's promise to pay, is the equivalent in a legal or economic sense of providing the utility a letter of credit or a cash deposit or a surety bond are strained and unconvincing. So, too, are their arguments that the listing of acceptable forms of assurance in § 366(c)(1)(A) should not be viewed as exclusive. *See* Doc. No. 69 at 4-5, 10. This subsection says that "the term 'assurance of payment' *means*" and not "the term 'assurance of payment' *includes*." The difference is telling. Section 102(3) establishes that the words "includes" and "including" when used in the Code are not limiting, and courts have thus read Code provisions with lists following the word "including" (such as those in § 1112(b)(4) and § 1307(c)) as nonexclusive. But, unlike those provisions, the term "includes" does not appear in § 366(c)(1)(A).

[14] Since BAPCPA did not amend § 366(b), the case law interpreting that subsection is still applicable. *See, e.g.*, *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change . . . .")

[15] *Caldor* validates an administrative expense priority as sufficient assurance of payment in a chapter 11 case. However, the exclusion found in § 366(c)(1)(B) and the instruction contained in § 366(c)(3)(B)(iii) effectively overrule that aspect of *Caldor* in chapter 11 cases.

MEMORANDUM OF DECISION - 10

assurance of payment.").

Adequate assurance of payment under subsection (b) "does not require an absolute guarantee of payment. What is required is that the utility will be protected from unreasonable risk of nonpayment." *Utica Floor*, 25 B.R. at 1014 (quotations omitted); *Steinebach*, 303 B.R. at 641 (noting that adequate assurance does not mean absolute assurance); *In re Santa Clara Circuits W., Inc.*, 27 B.R. 680, 684-86 (Bankr. D. Utah 1982) (discussing alternatives and types of "other security" available).

In this case, Debtors propose to provide Idaho Power with a first position, secured lien in the amount of $44,162.00 in the herd valued by Debtors at approximately $390,000.00 and in receivables. In addition, Debtors' budget shows an ability to make the scheduled payments to Idaho Power, *see* Motion at Ex. 1 *and see* Doc. No. 49, and the chapter 12 Trustee has approved the feasibility of the suggested approach, *see* Doc. No. 56.

To be sure, Idaho Power focused its argument on subsection (c) as added by BAPCPA, and it did not focus on the pre-BAPCPA provisions in subsection (b). Still, even when Idaho Power's critique of Debtors' proposal is read generously, the Court cannot conclude that Idaho Power has effectively challenged the proposed first priority lien on Debtors' dairy herd and receivables as not qualifying as "other security" providing it with "adequate assurance" of payment

MEMORANDUM OF DECISION - 11

under § 366(b).

**CONCLUSION**

Based on this record and considering the matter under § 366(b), not § 366(c), this Court conclude that Debtors' proposed lien meets the requirements of the Code and provides Idaho Power with adequate assurance of payment for post-petition services.

Debtors' Motion will therefore be granted. Debtors shall submit an appropriate form of order.

DATED: March 14, 2006



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 12