IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| LAYNE H. ASTLE and ) | Case No. 05-05706-TLM |
| CARLEEN MAY ASTLE, ) | |
| ) | |
| Debtors. ) | MEMORANDUM OF DECISION |
| ) | |
| _____ ) | |

## INTRODUCTION

Idaho Power Company filed an "Application for Approval of Administrative Expense and Attorneys Fees," Doc. No. 128 (the "Application"). Layne and Carleen Astle ("Debtors") objected to the Application. The Court took one aspect of the Application, a request for § 506(b) fees, under advisement following hearing on February 12, 2007. This Decision constitutes the Court's findings of fact and conclusions of law. *See* Fed. R. Bankr. P. 9014 (incorporating Fed. R. Bankr. P. 7052).

## BACKGROUND AND FACTS

In March, 2006, this Court decided that § 366(c), added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 ("BAPCPA"), applies only in chapter 11 cases. *In re Astle*, 338 B.R. 855, 858-60, 06.1 I.B.C.R. 5, 6-7 (Bankr. D. Idaho 2006). Because this is a chapter 12 case,

MEMORANDUM OF DECISION - 1

Debtors were allowed, over Idaho Power's objection, to provide "adequate assurance" of payment to Idaho Power under the provisions of § 366(b). *Id.* at 860-61. Specifically, Debtors granted Idaho Power a first position, postpetition lien in their dairy herd and milk receivables securing an amount of $44,162.00. *Id.*; *see also* Doc. No. 73 (order).

In August, 2006, Debtors sold a large portion of their herd, some 168 head, at a livestock auction, retaining only 55 head. This significant change in operations stemmed from a decision by the primary purchaser of Debtors' milk to buy only Grade-A milk. Debtors' dairy produced Grade-B milk, and Debtors concluded they could not effectively upgrade. However, even with a scaled back operation, Debtors continued to use electricity. This led to disputes with Idaho Power and, ultimately, the Application.

At the February 12 hearing on the Application, the parties agreed Idaho Power retained its lien on $20,000.00 in cattle proceeds from the auction of Debtors' herd, such funds being held by the Chapter 12 Trustee.[1] In addition, they agreed Idaho Power retained its lien on the unsold 55 head, which the Trustee valued at an average of $600.00 per head (a total of $33,000.00). They further agreed that Debtors owed no then outstanding debt to Idaho Power.

---

[1] The Court has since entered an Order, stipulated to by Idaho Power, instructing the Trustee to release $12,000.00 of those funds to Debtors for their living expenses and payment of postpetition taxes.

MEMORANDUM OF DECISION - 2

Idaho Power's Application sought three forms of relief. The only one remaining before the Court for decision following the February 12 hearing is its request for allowance and payment of attorneys' fees and costs in the amount of $5,672.50.[2] Idaho Power cites § 506(b) in support of this request and, at hearing, limited its arguments to that authority. The Court similarly limits its review and analysis in today's Decision.[3]

## DISCUSSION AND DISPOSITION

Section 506(b) provides:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement *or State statute*

---

[2] Based on a series of disputes over payment of ongoing electricity consumption, Idaho Power's Application sought allowance and compelled payment of a § 503(b)(1)(A) expense. However, given the parties' agreement at the February 12 hearing that the utility bills were "current," Idaho Power withdrew its § 503(b)(1)(A) request. Idaho Power's Application also sought Court sanction of an immediate termination of service to Debtors, a preemptive strike based on the concern that Debtors' electric consumption would substantially increase come spring and that the previously granted § 366(b) assurances of payment would become less than "adequate." The Court denied that relief at hearing given no present debt, substantial security, and a lack of clarity in the submissions about future events. Subsequently, Debtors and Idaho Power stipulated to termination of electrical service to Debtors' irrigation pumps. *See* Doc. No. 153.

[3] The Court is aware of the recently issued Supreme Court decision in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec.*, ___ U.S. ___, 2007 WL 816795 (March 20, 2007) (rejecting this Circuit's "*Fobian* rule," *see In re Fobian*, 951 F.2d 1149 (9th Cir. 1991) as not supported by the Code.). However, as *Kord Enters. II v. California Commerce Bank (In re Kord Enters. II),* 139 F.3d 684 (9th Cir. 1998), stated: "We note at the outset what *In re Fobian* is *not*. It is not a § 506(b) case." 139 F.3d at 687. *Travelers Casualty & Surety* declined to address § 506(b) arguments that were made by PG & E and, further, stated: "[W]e express no opinion with regard to whether, following the demise of the *Fobian* rule, other principles of bankruptcy law might provide an independent basis for disallowing Travelers' claim for attorney's fees." 2007 WL 816795 at *9.

MEMORANDUM OF DECISION - 3

under which such claim arose.

The emphasized language ("or State statute") was added by BAPCPA. This new language is key to Idaho Power's arguments. But to address those arguments, the Court must start with the accepted construction of the pre-amended subsection.

### A. Section 506(b) under the pre-BAPCPA Code

Prior to the 2005 amendments, a creditor was entitled to attorneys' fees if (1) the claim was an allowed secured claim; (2) the creditor was oversecured; (3) the fees were reasonable; and (4) the fees were provided for under the agreement giving rise to the claim. *See Kord Enters. II v. California Commerce Bank (In re Kord Enters. II)*, 139 F.3d 684, 689 (9th Cir. 1998). *See also Hassen Imports P'ship v. KWP Fin. VI (In re Hassen Imports P'ship)*, 256 B.R. 916, 925 (9th Cir. BAP 2000) (following *Kord Enters.*); *In re Lopez*, 349 B.R. 671, 678-79 (Bankr. D. Idaho 2006) (same); *In re Staggie*, 255 B.R. 48, 51-52, 00.4 I.B.C.R. 203, 204 (Bankr. D. Idaho 2000) (same). The restrictive language of § 506(b) meant only oversecured creditors whose rights to attorneys' fees were "provided for under the agreement under which such claim arose" could recover under § 506(b). *Kord Enters.*, 139 F.3d at 687; *Hassen Imports*, 256 B.R. at 925-26; *Lopez*, 349 B.R. at 678-79.

These decisions rest on a solid foundation. Section 506(b) was at the heart of the United States Supreme Court's decision in *United States v. Ron Pair Enters.*, 489 U.S. 235 (1989). There the United States, as an oversecured,

MEMORANDUM OF DECISION - 4

nonconsensual tax lien creditor, argued it was entitled to interest on its claim. The Court agreed, finding the structure of § 506(b) and its plain language evidenced Congress' intent that postpetition interest be allowed to *all* oversecured creditors. 489 U.S. at 241-43. In reaching this conclusion, the Supreme Court also clarified the operation of the "under the agreement" limiting language:

> The relevant phrase in § 506(b) is "[T]here shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." "Such claim" refers to an oversecured claim. The natural reading of the phrase entitles the holder of an oversecured claim to postpetition interest and, in addition, gives one having a secured claim pursuant to an agreement the right to reasonable fees, costs and charges provided for in that agreement. Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available.

*Id.* at 241. *Ron Pair* further noted the "grammatical structure" of the subsection supported this conclusion, because "interest on such claim" was set aside by a comma and separated from the balance of the sentence by the words "and any" making the right to interest "independent of the language that follows." *Id.* at 241.

> "[I]nterest on such claim" is not part of the list made up of "fees, costs, or charges," *nor is it joined to the following clause so that the final "provided for under the agreement" modifies it as well.* . . . The language and punctuation Congress used cannot be read any other way.

*Id.* at 241-42 (citation omitted; emphasis added).[4]

---

[4] The dissent in *Ron Pair* disapproved of the majority's reliance on the comma after "interest on such claim" (which it called a "capricious bit of punctuation"), and concluded that
(continued...)

MEMORANDUM OF DECISION - 5

Among more recent cases, the Fifth Circuit in *Bridgeport Tank Trucks v. Lien Agent (In re EnRe LP)*, 457 F.3d 493 (5th Cir. 2006), stated:

> The plain language of the statute assumes that creditors who seek fees [under § 506(b)] possess a security agreement that authorizes the charging of collection fees; a general agreement for fees, such as a clause in a labor/supply contract, does not qualify, if it is not the agreement under which the "allowed secured claim" arose. *See Rushton v. State Bank of S. Utah (In re Gledhill)*, 164 F.3d 1338, 1341 (10th Cir. 1999) (explaining that an "'allowed secured claim' is the specific claim presented to the bankruptcy court for payment"). In this case, it is undisputed that state involuntary lien laws, *not* the work orders or invoices delivered by the creditors to EnRe, constituted the only basis for Appellants' allowed secured claims. Absent security agreements, the claims fail to satisfy the statute's requirement for oversecured creditors' recovery of collection fees."

*Id.* at 494-95.

Thus, the critical question under this precedent is whether the agreement that gave rise to the creditor's claim also provided a right to fees and, if so, to what extent. Here, Idaho Power concedes that it has no security agreement or any other contract or "agreement" that provides a right to recover attorneys' fees. This would be fatal to a § 506(b) claim under the pre-BAPCPA Code. But, according to Idaho Power, the insertion of the language "or State statute" in § 506(b) altered the application of the fourth element, and the amended Code now supports its claim. Idaho Power relies on a general fee statute, Idaho Code § 12-120(3), as its

---

[4](...continued)
interest *as well as* fees and costs were qualified by the phrase "provided for under the agreement under which such claim arose." 489 U.S. at 249-251.

MEMORANDUM OF DECISION - 6

§ 506(b) "State statute."[5]

### B.     Amended § 506(b)

This Court previously noted in this case that: "[a]s with most issues arising under BAPCPA, the threshold inquiry is to determine precisely what was said, and left unchanged, as Congress amended the Code." *Astle*, 338 B.R. at 857.  It further stated:

> This approach is driven by the consistent command that the Court defer to the language of the Code and to follow its "plain meaning." *See Lamie v. United States Tr.*, 540 U.S. 526, 534-36 (2004); *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (noting that it is the court's duty "to give effect, if possible, to every clause and word of a statute") (internal quotations omitted); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (stating that the court's role is to enforce the text according to its terms when the language is plain); *Hughes Aircraft Co. v. Jacobsen*, 525 U.S. 432, 438 (1999) (stating that the court must start its analysis with the existing statutory text); *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989).

---

[5] Idaho Code § 12-120(3) provides for recovery of reasonable fees to the prevailing party in, among other things, "any civil action . . . [on] any commercial transaction."  It goes on to define "commercial transaction" as "all transactions except transactions for personal or household purposes."

Debtors dispute *any* recourse of Idaho Power to Idaho Code § 12-120(3) as a means to recover fees under amended § 506(b).  They argue that Idaho Power, as a regulated public utility, is expressly limited to collecting only the rates and tariffs allowed by the Idaho Public Utility Commission.  *See* Doc. No. 140 at 2 (supplemental objection).  It appears to the Court that Debtors' blanket assertion of the inapplicability of Idaho Code § 12-120(3) to Idaho Power is too broad.  For example, in *Idaho Power Co. v. Ben J. Houseman Co.*, 851 P.2d 970 (Idaho 1993), the Idaho Supreme Court affirmed a grant of summary judgment to Idaho Power and awarded costs on appeal "together with attorney fees pursuant to I.C. § 12-120(3)" to Idaho Power.  *Id.* at 972 (involving "weatherization" agreements between Idaho Power and its customer, which the customer secured with junior mortgages; Idaho Power's interests in the real properties were foreclosed, and it sued on the debt.)  However, the conclusion that Idaho Power faces no *per se* bar to utilizing Idaho Code § 12-120(3) does not resolve the § 506(b) questions in the instant case.

MEMORANDUM OF DECISION - 7

*Id.* at n.6.

Idaho Power argues for a broad reading of amended § 506(b), contending that Congress meant for BAPCPA to expand the ability of secured creditors to recover fees, costs and charges. The amendment does, indeed, expand § 506(b) by adding "State statute" as a potential basis for recovery of fees by oversecured creditors. But *how* it expanded § 506(b) is critical. The pertinent question is this: Does the language "under which such claim arose," which Congress left in § 506(b) when enacting BAPCPA, limit fee claims advanced under State statute in the same way it limits fee claims under agreements? The Court concludes it does and that Idaho Power's reading is not supported by § 506(b)'s plain language.

### 1.    Construction of § 506(b)

Had Congress meant to engraft into § 506(b) a right to attorneys' fees for every oversecured creditor where applicable state law had a general fee statute, it could have rewritten that subsection to clearly so provide. Even if Congress elected only to insert the phrase "or State statute," there were a number of possible places in subsection (b) where it could go. For example, Congress could have said:

> ". . . there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose *or State statute*."

This arguably supports the idea that the restrictive language of § 506(b) – "under which such claim arose" – was meant to apply only to fees claimed under an

MEMORANDUM OF DECISION - 8

agreement and not to fees claimed under a State statute.

Congress, however, did not amend § 506(b) in such a manner. Amended § 506(b) states that reasonable fees are allowable only when they are "provided for under the agreement or State statute under which such claim arose." By virtue of the point of placement of the new language, the limiting clause "under which such claim arose" applies to assertions under statute just as much as to assertions under written agreement. It is difficult to parse the sentence and conclude otherwise.[6] *Accord*, *Ron Pair*, 489 U.S. at 241-42 (quoted *supra*).[7]

Admittedly, the placement of the qualifying language "under which such claim arose" is somewhat awkward. The Supreme Court said, however, in connection with another Congressional amendment to the Code: "The statute is awkward, and even ungrammatical; but that does not make it ambiguous on the

---

[6] To "parse" is "to break (a sentence) down into parts, explaining the grammatical form, function, and interrelation of each part." Webster's New Twentieth Century Dictionary 1305 (2d ed. 1983). As used here, it is an exercise to determine whether the clause "under which such claim arose" modifies "State statute." There are those that view such close reading as unduly technical, but the Supreme Court has noted that while it "does not review congressional enactments as a panel of grammarians," neither does it "regard ordinary principles of English prose as irrelevant to a construction of those enactments." *Flora v. United States*, 362 U.S. 145, 150 (1960).

[7] The judicial construction of § 506(b) which included *Ron Pair*, and the limitation of § 506(b) to only those situations where fees were authorized "under the agreement under which such claim arose" were well established prior to BAPCPA's enactment. This suggests strongly that the limitation remains. *See Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) (stating that "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate.' . . . [T]his Court has been reluctant to accept arguments that would interpret the Code . . . to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history."); s*ee also Astle*, 338 B.R. at 861 n.14 (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change[.]")).

MEMORANDUM OF DECISION - 9

point at issue." *Lamie*, 540 U.S. at 534 (addressing § 330(a)(1) as amended in 1994).

Amended § 506(b) is also not ambiguous, especially in light of the analysis of *Ron Pair*. Congress did add "or State statute" to § 506(b) but, in doing so, "joined [it] to the following clause so that the final 'provided for under the agreement' modifies it as well." *See Ron Pair*, 489 U.S. at 241-42. "State statute" does not stand independent of this modifying language. This Court concludes the oversecured lien creditor relying on a "State statute" is entitled to § 506(b) fees only if the State statute under which the claim itself arose provides for recovery of fees.

Only one post-BAPCPA case has been found that addresses this issue, and it supports the conclusion reached by this Court. *See In re Davis*, 352 B.R. 651 (Bankr. N.D. Tex. 2006).[8] There, the debtors were unable to pay 2003 ad valorem taxes on their home, and they entered into an agreement with Genesis Tax Loan Services, Inc. under which Genesis would pay the taxes on the debtors' behalf and receive a transfer of the tax lien on the debtors' home. The agreement gave the debtors seven years to repay the obligation to Genesis and provided Genesis the right, should the debtors default, to accelerate the loan and foreclose on the house under Texas statute. 352 B.R. at 652-53. Following the debtors' bankruptcy,

---

[8] The parties did not cite to or discuss this case.

MEMORANDUM OF DECISION - 10

Genesis sought its attorneys' fees under § 506(b). The court stated:

> Under section 506(b), a secured creditor is entitled to recover "reasonable fees, costs, or charges provided for under the agreement or State statute under which the claim arose." Code § 506(b). The note executed by Debtors in favor of Genesis provides for the payment of attorney's fees, however, this was not the "agreement . . . under which the claim arose." Being a tax claim, Genesis' claim actually arose under the Texas Tax Code. Thus, Genesis is only entitled to reimbursement for reasonable attorney's fees to the extent that the Tax Code provides for their recovery.

*Id.* at 655-56. The *Davis* court correctly perceives the nexus required under § 506(b): the right to attorneys' fees, costs, or charges must be authorized by or provided for in the statute under which the secured claim actually arose.

Therefore, under amended § 506(b), there are still four elements a creditor must meet in order to recover its attorneys' fees. A creditor is entitled to attorneys' fees if (1) its claim is an allowed secured claim; (2) it is an oversecured creditor; (3) the fees it asserts are reasonable; and (4) the fees are provided for under an agreement under which such claim arose, or the fees are provided for under a State statute under which the creditor's claim arose.

### 2.    Application of amended § 506(b) to Idaho Power

The Court approved Debtors' provision of a lien to Idaho Power to provide adequate assurance of payment under § 366(b).[9]  Idaho Power is therefore

---

[9] Idaho Power has a "lien" but not a "security interest," *i.e.*, a lien created by an agreement. *See* § 101(37) (defining lien as "charge against or interest in property to secure payment of a debt or performance of an obligation") *and compare* § 101(51) (defining security interest as a "lien created by an agreement") and § 101(50) (defining security agreement as an
(continued...)

MEMORANDUM OF DECISION - 11

"secured" and the first element is met.  Idaho Power is also oversecured, being owed nothing and having some $53,000.00 of property as of the February 12 hearing (currently $41,000.00, *see supra* note 1) to secure payment of future charges.  Thus, the second element is also met.  Debtors do not dispute these conclusions.

As to the third element, Debtors argue that, even if Idaho Power's fees are allowed under § 506(b), some significant (though unspecified) portion of those fees should be found unreasonable.  The Court need not reach this issue because Idaho Power fails to meet the fourth element.

Idaho Power has conceded that its claim did not arise under any agreement.  And the Court concludes Idaho Power's claim did not arise "under" any State statute including, but not limited to, Idaho Code § 12-120(3).  As noted, Idaho Power's lien was a § 364(d)(1) lien and, thus, the claim arose under federal law and not any State statute.

Idaho Power's attempted reliance on Idaho Code § 12-120(3) is not persuasive.  Notwithstanding that this is a State statute, Idaho Power's claim did not arise under it.  *Davis*, 352 B.R. at 655-56.  Idaho Code § 12-120(3) is a

---

[9](...continued)
"agreement that creates or provides for a security interest").  Debtors' motion, Doc. No. 43, cited no Code provision other than § 366.  However, it did cite Local Bankruptcy Rule 4001.1 which applies to motions under § 364.  The post-petition lien was created to provide § 366(b) "adequate assurance" but was, in effect, a § 364(d)(1) lien.  Debtors' use of the term "security interest" in their motion is not determinative.  The Court's prior opinion eschewed that term and characterized the grant as a "lien."

MEMORANDUM OF DECISION - 12

general, statutory authorization for fees to prevailing parties in litigation over commercial transactions. And just as *EnRe LP* held that a "general agreement for fees . . . does not qualify, if it is not the agreement under which the 'allowed secured claim' arose," a general statute providing for fees would not qualify under amended § 506(b) if it is not the State statute under which the claim arose. *See* 457 F.3d at 494.

**CONCLUSION**

Idaho Power's asserted right to recover its bankruptcy-related attorneys' fees is based exclusively on § 506(b). While amended § 506(b) now adds "State statute" to the agreement-based fee provision that previously existed, the Code as amended still requires Idaho Power show, first, that the statute "under which" its claim arose was a State statute and, second, that the same statute provides for fees. As discussed above, Idaho Power has not done so. Since Idaho Power failed to establish that it is entitled to attorneys' fees under § 506(b), the Application, Doc. No. 128, will be denied. An order will be entered accordingly.

DATED: March 22, 2007



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 13